# IN THE UNITED STATES DISTRICT COURT
## SOUTHER DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| Daniel Thomas | : |
| 6125 Georges Park Drive | |
| Canal Winchester, Ohio 4311 | : |
| Father and legal guardian | |
| of Evan Thomas and Sam | : |
| Thomas, minors | |
| | : |
| and | |
| | : |
| Anna Thomas | |
| 6125 Georges Park Drive | : |
| Canal Winchester, Ohio 43110, | |
| | : |
| Plaintiffs | |
| | : |
| -vs- | |
| | : |
| Nationwide Children's Hospital | |
| S/A Rhonda L. Comer | : |
| 700 Children's Drive | |
| 7th Floor OCC | : Civil Action No. _____ |
| Columbus, Ohio 43205 | |
| | : Jury Demand Endorsed Hereon |
| and | |
| | : |
| The Center For Family Safety | |
| and Healing | : |
| S/A Rhonda L. Comer | |
| 700 Children's Drive | : |
| 7th Floor OCC | |
| Columbus, Ohio 43205 | : |
| | |
| and | : |
| | |
| The Center for Child and Family | : |
| Advocacy at Nationwide Children's | |
| Hospital | : |
| S/A Rhonda L. Comer | |
| 700 Children's Drive | : |
| 7th Floor OCC | |
| Columbus, Ohio 43205 | : |

|  |  |
|---|---|
| and | |
|  | : |
| Farah Wadia Brink, M.D. | |
| 655 East Livingston Avenue | : |
| Columbus, Ohio 43205 | |
|  | : |
| and | |
|  | : |
| Jonathan Thackeray, M.D. | |
| 655 East Livingston Avenue | : |
| Columbus, Ohio 43205 | |
|  | : |
| and | |
|  | : |
| The City of Columbus, Ohio | |
| 50 West Broad Street | : |
| Columbus, Ohio 43215 | |
|  | : |
| and | |
|  | : |
| Board of Trustees, Franklin | |
| County Children Services | : |
| 855 West Mound Street | |
| Columbus, Ohio 43223 | : |
|  | : |
| and | |
|  | : |
| Mallory Figgins | : |
| Board of Trustees, Franklin | |
| County Children Services | : |
| 855 West Mound Street | |
| Columbus, Ohio 43223, | : |
|  | |
| Defendants | : |

**COMPLAINT AND COMPLAINT FOR DECLARATORY JUDGMENT**

**I. INTRODUCTION, PARTIES, JURISDICTION**

1. For over eighteen (18) hours on the night of May 23, 2013 and early morning of May 24, 2013, Anna Thomas, her husband, Daniel Thomas, and their two children, Evan, aged three (3) months, and Sam, aged twenty-two (22) months, were traumatized by the actions of these Defendants. Without parental

consent, or justification, the two children were subjected to high doses of ionizing radiation and insertion of needles in their bodies while Anna Thomas looked on in fear and confusion. The detention of Anna Thomas and Evan for hours in the emergency room of the Defendant Nationwide Children's Hospital, the compelled return to the Hospital in the early morning hours of May 24, 2014 with Sam, and the intrusions into the privacy of the boy's bodies has caused severe, long-term consequences for the children and their mother;

2. At all times pertinent hereto, Defendants Nationwide Children's Hospital, The Center For Child Advocacy and Healing at Nationwide Children's Hospital and The Center for Family Safety and Healing were not-for-profit corporations organized under the laws of the State of Ohio [hereafter "the Nationwide Defendants"];

3. At all times pertinent hereto, Defendant Jonathan Thackeray, M.D. was Executive Director of The Center for Family Safety and Healing, acting for and under authority of the Nationwide Defendants, and was the final decisionmaker formulating and authorizing the illegal actions taken against the Thomas family as set forth herein. He is sued in his individual and official capacities;

4. At all times pertinent hereto, Defendant Farah Wadia Brink, M.D. was a fellow of The Center for Family Safety and Healing, acting for and under the authority of the Nationwide Defendants, and authorized the illegal actions taken against the Thomas family as set forth herein. She is sued in her individual and official capacities;

5. At all times pertinent hereto, the Nationwide Defendants and The City of Columbus, Ohio, Division of Police, as well as the Board of Trustees, Franklin County Children's Services [hereafter "FCCS"], engaged in the joint and collaborative law enforcement activities of investigation of suspected child abuse, pursuant to two agreements: (1) "Memorandum of Understanding For The Investigation Of Child Abuse And Neglect" dated July 1, 2012, and (2) "Memorandum of Understanding For The Center For Family Safety And Healing" dated January 1, 2013 [hereafter "the agreements"];

6. Pursuant to the agreements, the Defendants agreed to "collaborate" to, among other things, "facilitate prosecution of those individuals who perpetrate crimes involving family violence." The goals of the collaboration were, among others, to "increase the effectiveness of investigations and prosecutions involving victims of family violence";

7. In order to achieve these goals, the Defendants agreed to a "coordinated approach to team-based investigations" including "data collection for all cases ... of child abuse that are subjected to investigation [and] referral for prosecution....";

8. As a result of these, and other, undertakings by the Nationwide Defendants pursuant to the continuing agreements, they assume the responsibility to gather evidence, through interrogation of alleged perpetrators, and use of medical procedures, with the goal to uncover evidence of child abuse which they then share with The City of Columbus, Division of Police, and FCCS. The protocols used by the Nationwide Defendants in this endeavor were

formulated and authorized by Defendant Thackeray. It is these protocols which the Defendants asserted justified the illegal actions set forth herein. These Defendants, through admissions to NCH, conduct the illegal seizures and searches identified below on between 200 and 300 families each year;

9. Such activities by the Nationwide Defendants do not constitute the delivery of medical care from health care professional to patient, but are undertaken as an arm of law enforcement and FCCS;

10. At all times pertinent hereto, therefor, the Nationwide Defendants, and Defendants Thackeray and Brink, were engaging in state action as that term is construed under 28 U.S.C. §1983;

11. At all times pertinent hereto, Defendants The City of Columbus and FCCS knew, and approved, of the Nationwide Defendants' means of gathering evidence for purposes of law enforcement and directed that evidence gathering;

12. The Court has jurisdiction of this case under federal question jurisdiction, §28 U.S.C. §1331. This Court also has pendent jurisdiction of the state law claims, which arise out of the same nucleus of operative facts, pursuant to 28 U.S.C. §1367;

13. Venue is proper in this Court pursuant to 28 U.S.C. §1391;

14. The federal claims are brought to vindicate rights guaranteed Plaintiffs under 28 U.S.C. §1983;

## II. FACTS

15. Plaintiffs reallege Paragraphs 1 through 14 as if fully set forth herein;

16. Anna Thomas, presently age 28, and Daniel Thomas, presently age 30, were married on July 24, 2010;

17. Of that marriage, on June 28, 2011, Sam Thomas was born. Sam came under the care at birth of Michelle Morris, a pediatrician. From his birth, until and after May 23, 2013, he was regularly seen and examined by Dr. Morris. As of May 23, 2013, Sam was a happy, gregarious child of appropriate developmental age;

18. On February 7, 2013, Evan Thomas was born. Like his brother, he immediately came under the care of Dr. Morris. He was regularly seen by Dr. Morris for "well baby" examinations up to May 23, 2013;

19. On Sunday, May 19, 2013, Anna Thomas was attending Catholic mass at Pope John XXIII Parish. She was accompanied by Evan. During the mass, she had Evan secured in a "Chicco" brand soft child carrier;

20. At one point, Anna bent over, reaching down to the floor and Evan cried out;

21. After being comforted, Evan appeared to be fine. However, later that evening, and the next morning, he was warm to the touch and fussy. Anna called Dr. Morris's office and was able to secure an appointment that day. Upon examination of Evan, the nurse practitioner informed Anna that she believed Evan had an infection, and prescribed antibiotics;

22. Anna took Evan home and began the regimen of medicine;

23.    By Thursday, however, Evan remained irritable, and was reacting to touch of his left leg. Concerned, Anna called and secured another appointment with the pediatrician's office for that afternoon;

24.    Anna arrived with Evan at the office approximately 3:00 p.m. After examining Evan, the nurse practitioner informed Anna that she believed Evan may have had a left hip problem, and directed her to take him to the Emergency Room at Nationwide Children's Hospital [hereafter, "NCH"] for an examination and X-ray;

25.    Anna drove Evan directly to NCH, where she reported to the Eemergency Room. This was approximately 4:30 p.m.;

26.    After being processed, Anna and Evan were taken into the department to a treatment room. A hospital resident entered, took a history, conducted a brief musculoskeletal examination, and then informed Anna that an X-ray was warranted;

27.    After some delay, Evan was taken from the treatment room and an X-rays were taken. After more waiting, the attending physician entered and informed Anna that Evan had a fracture of the femur, and, also, that because of the nature of the break, she would have to bring in a social worker;

28.    A social worker was consulted, and Brink was notified. Brink directed that Evan be subjected to a CT scan of head, 21 additional X-rays constituting a "skeletal survey," and also have blood drawn and analyzed. The purpose of this order was to gather evidence for purposes of determining

whether Evan had been victimized by child abuse, not for medical diagnosis or treatment. At no time did Brink examine Evan, nor obtain any history herself;

29. The social worker, Trishia Richardson, entered the treatment room and interviewed Anna, repeatedly questioning her regarding the event of the injury and Anna's actions from that Sunday up to the admission at NCH. Richardson informed Anna that FCCS was being brought into the case and that a report of possible child abuse was being made to law enforcement, in his instance, Columbus Division of Police. Richardson made clear that Anna was considered a possible perpetrator of child abuse against her son;

30. Pursuant to Brink's directive, at approximately 10:20 p.m., NCH staff removed Evan from the treatment room and began the radiographic examinations. Anna was not informed of the reason behind the testing, and was, until she witnessed the skeletal X-ray examination, of the belief that the testing was for medical reasons related to the fracture. No informed consent was sought, or obtained, before the procedures began;

31. Subsequently, an IV needle was inserted into Evan's hand, and blood taken. Anna was not informed of the reason for this testing, nor was she asked, nor did she give, informed consent;

31. At or about 10:30 p.m., an orthopod fitted Evan with a "Pavlic harness" which completed the medical care necessary for the fracture. It was determined that no hospitalization for the injury was warranted. However, Anna was not informed that she and Evan were free to go. To the contrary, the statements of Richardson made clear that she and Evan were not free to leave;

32. At approximately midnight on the 23rd, Richardson returned to the treatment room and informed Anna that she was required to return home and bring Sam into NCH for testing. Richardson was acting under the direction of FCCS in giving this order to Anna. Anna was not informed that she or Dan had any option to refuse this demand;

33. In the hours leading up to midnight, Richardson and others had communicated with FCCS regarding the suspected child abuse. FCCS was informed by the Nationwide Defendants of the testing that was being imposed on Evan. Pursuant to the agreed protocol, NCH denied release to Evan pending further involvement in the investigation by FCCS;

34. At 1:00 a.m. on May 24th, Defendant Mallory Figgins, a staff investigator for FCCS, interrogated Anna in the NCH Emergency Department. Figgins reiterated the demand that Anna, upon release, immediately return to NCH so that examination and testing could be made of Sam;

35. At approximately 3:00 a.m., FCCS approved the release of Anna and Evan from the custody of NCH. Anna immediately returned home, roused Dan and Sam from bed, and the entire family returned to NCH, arriving approximately 4:30 a.m.;

36. Between that time and approximately 8:50 a.m., Sam was subjected to insertion of an IV and blood draw and another 21 "skeletal survey" X-rays. Neither parent gave informed consent to these procedures, but submitted their son to them because of fear that if they refused, FCCS and the police would remove the children from their custody;

37. Sam was discharged from NCH only after staff consulted with FCCS and obtained approval to allow the family to leave the custody of the hospital;

38. During the entire period from the afternoon of May 23rd through the morning of May 24th, although the Nationwide Defendants knew of the identity of the children's pediatrician, and knew that Dr. Morris had cared for them from birth, no one made any effort to contact Dr. Morris for her impressions or opinions before subjecting the two children to the invasive examinations. Had Dr. Morris been consulted, she would have informed the Defendants that, based on her experience and history with the Thomas's, the fracture was completely consistent with an accidental injury, that Anna Thomas was a credible historian, and that there was no possibility that either she or her husband had engaged in child abuse;

39. All the actions taken by the Nationwide Defendants were done pursuant to the agreements identified above; the protocols established by the Nationwide Defendants and Defendant Thackeray; and the direct intervention of FCCS;

40. On June 30, 2013, Plaintiffs were notified by FCCS that the accusations, that Dan and Anna were "alleged perpetrators" of child abuse against Evan or Sam, had been found to be unsubstantiated;

40. The NCH Defendants charged Dan and Anna for the testing and procedures utilized in the investigation of possible child abuse;

### III. FIRST CLAIM: CLAIM AGAINST THE NATIONWIDE DEFENDANTS, THACKERAY AND BRINK: ASSAULT

41. Plaintiffs reallege Paragraphs 1 through 40 as if fully set forth herein;

42. Defendants assaulted Evan and Sam when they subjected them to unnecessary ionizing radiation and inserted IV needles into them, in conformance with the established protocols;

43. As a direct and proximate result, Plaintiffs suffered pain, exposure to radiation, injury to cellular DNA, and increased potential for the future development of cancer;

### IV. SECOND CLAIM: CLAIM AGAINST THE NATIONWIDE DEFENDANTS, THACKERAY, BRINK, FIGGINS AND FCCS: FALSE IMPRISONMENT

44. Plaintiffs reallege Paragraphs 1 through 43 as if fully set forth herein;

45. Defendants' retention of custody of Anna and Evan, after the medical necessity for Evan's visit to NCH had ended, constituted false imprisonment;

46. Defendants' order, that Plaintiffs bring Sam to NCH for testing and evaluation, and the entire period of Plaintiffs' presence at NCH on the morning of May 24th, constituted false imprisonment;

47. As a direct and proximate result, Plaintiffs Anna Thomas, and Sam and Evan, have suffered pain, emotional distress, humiliation and loss of enjoyment of life;

## V. THIRD CLAIM: CLAIM AGAINST THE NATIONWIDE DEFENDANTS, THACKERAY AND BRINK: NEGLIGENT/RECKLESS INFLICTION OF EMOTIONAL DISTRESS

48. Plaintiffs reallege Paragraphs 1 through 47 as if fully set forth herein;

49. Defendants' actions, in subjecting Anna to (1) repeated interrogation about the injury to Evan and her activities; (2) holding her and Evan at NCH after any medical reason had been satisfied while informing her that she was being reported to FCCS and law enforcement as an alleged child abuser; (3) witnessing her son being exposed to ionizing radiation and painful insertion of a needle into his vein; all in the absence of any reasonable suspicion that Evan had been subjected to child abuse and without first having consulted with the most knowledgeable professional, Dr. Morris, constituted negligent and reckless infliction of serious emotional distress;

50. As a direct and proximate result, Anna has suffered severe and debilitating mental and emotional anguish, has experienced physical pain and suffering, has come under the care of health care professionals, and continues to experience such injury and incur expense for professional care;

## VI. FOURTH CLAIM: CLAIM AGAINST ALL DEFENDANTS: VIOLATIONS OF FOURTH AND FOURTEENTH AMENDMENTS

51. Plaintiffs reallege Paragraphs 1 through 50 as if fully set forth herein;

52. The Fourth Amendment to the Constitution of the United States, applied to state actors through the Fourteenth Amendment, prohibits

unreasonable searches and seizures, and makes such searches and seizures for law enforcement purposes, without the state actors first having obtained a warrant or informed consent, *per se* unconstitutional in the absence of exigent circumstances;

53. Defendants' actions taken against Evan and Sam, on the night of May 23-24, 2014, constituted searches of these children's bodies;

54. Defendants' actions on the night and morning of May 23-24, 2014 constituted seizures of Anna, Evan and Sam;

55. When the Defendants took the actions they did, there were no exigent circumstances justifying them acting without first presenting the facts to a neutral magistrate;

56. Defendants' actions, in formulating and executing the collaborative data gathering for law enforcement purposes in this case was in reckless disregard of the Plaintiffs' rights under the Fourth Amendment;

57. As a direct and proximate result, Evan and Sam suffered pain, exposure to radiation, injury to cellular DNA, and increased potential for the future development of cancer. Anna suffered emotion distress, and continues to experience injuries;

### VII. FIFTH CLAIM: CLAIM AGAINST ALL DEFENDANTS: FIFTH AMENDMENT VIOLATION

58. Plaintiffs reallege Paragraphs 1 through 57 as if fully set forth herein;

59. Defendants' actions, in compelling the parents to submit their children to the invasive procedures, violated Plaintiffs' Fifth Amendment rights to due process;

60. The actions of the Defendants were shocking to the conscience;

61. As a direct and proximate result, Evan and Sam suffered pain, exposure to radiation, injury to cellular DNA, and increased potential for the future development of cancer. Anna suffered emotion distress, and continues to experience injuries;

### VIII. SIXTH CLAIM: DECLARATORY JUDGMENT: CLAIM AGAINST NATIONWIDE DEFENDANTS: DUE PROCESS

62. Plaintiffs reallege Paragraphs 1 through 61 as if fully set forth herein;

63. This claim is brought pursuant to 28 U.S.C. §2201;

64. Defendants' billing and collection actions taken against Plaintiffs, requiring them to pay for the Defendants' unconstitutional actions, constitutes a continuing violation of Plaintiff's Fifth Amendment right not to be subject to taking of property without due process;

WHEREFORE, Plaintiffs demand judgment, jointly and severally, as follows:

1. Under all claims, compensatory damages in such amounts as the jury deems just;

2. Under all claims, punitive damages in such amounts as the jury deems just;

3.  Under the Fourth and Fifth Claims, an award of costs and reasonable attorney fees pursuant to 28 U.S.C. §1988;

4.  Under the remaining claims, an award of reasonable expenses and fees of this case under the common law for a total award of ten million dollars ($10,000,000.00);

5.  An award enjoining the Nationwide Defendants from attempting to collect the charges levied on Plaintiffs for the illegal actions;

6.  Such other equitable relief as the Court deems just.

Respectfully submitted,

/s/ Michael Garth Moore
Michael Garth Moore (0025047)
341 South Third Street Suite 201
Columbus, Ohio 43215
Telephone 888-318-0075
mike@mgmoorelaw.com

Counsel for Plaintiff

**JURY DEMAND**

Plaintiff demands trial by a jury of twelve (12) persons as to all issues.

Respectfully submitted,

/s/ Michael Garth Moore