```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                      EASTERN DIVISION

Daniel Thomas, et al.,          :

     Plaintiffs,                :

   v.                           :    Case No. 2:14-cv-1236

                                :    JUDGE ALGENON L. MARBLEY
Nationwide Children's Hospital,      Magistrate Judge Kemp
Inc., et al.,                   :

     Defendants.                :
```

OPINION AND ORDER

I. Introduction

In their second amended complaint, the three sets of Plaintiffs - Anna and Daniel Thomas, Chad and Lori Burley, and Jessica Rose and Russell Moore, together with their children - allege that the Defendants, including Nationwide Children's Hospital and its employees, conspired to violate the rights of parents and children who sought medical treatment at the hospital. More specifically, they claim that, in their respective cases, after they sought treatment for their children, hospital employees ordered additional medical tests not for the purpose of diagnosis and treatment, but in order to gather evidence for possible criminal prosecution for child abuse. In some instances, that involved bringing other children into the hospital for testing. All of the parents assert that they did not give informed consent to these procedures, and that medical information was provided to third parties, such as the Columbus Division of Police or Franklin County Children's Services, without their consent as well. The complaint includes claims sounding in assault, false imprisonment, violation of the physician-patient privilege, negligent or reckless infliction of emotional distress (asserted only by Anna Thomas), and violations

of the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

The case is currently before the Court to consider a motion to compel, filed by Defendants and directed only to the Burley Plaintiffs. As described in more detail below, the motion raises an issue about the relevance of child abuse and neglect investigation files maintained by the North Carolina Division of Social Services and Franklin County Children Services. For the following reasons, the motion will be denied.

## II. The Discovery Dispute
### A. The Parties' Arguments

On July 6, 2015, Nationwide Children's Hospital and other Defendants filed a motion titled "Motion to Compel Executed Authorizations for Release of Mental Health Records" (Doc. 50). The motion seeks "an Order compelling Plaintiffs Chad and Lori Burley to produce executed authorizations directed to the North Carolina Division of Social Services and Franklin County Children Services for the release of child abuse and neglect investigation files." Id. at 1.

As support for their request, Defendants note that, as it relates to the current case, one of the Burleys' children was taken to Nationwide Children's Hospital when only 19 days old, and was subsequently diagnosed with a depressed skull fracture. At some point during the treatment of that child, Ms. Burley told a hospital employee that she (Ms. Burley) had lost custody of three older children, who were then residing with their maternal grandmother. The change of custody occurred while Ms. Burley was living in North Carolina, and allegedly was related to an accusation of abuse against Ms. Burley's then-husband. According to Defendants, that information was part of the reason they suspected and investigated the possibility that the child whom they were treating might have been a victim of abuse. Defendants assert that the details of any prior investigations of child

abuse are therefore relevant to the issue of the reasonableness of their actions, and also might show that Ms. Burley was not completely truthful about what she told hospital employees, raising an issue as to her credibility.  Finally, they assert that these records would show that Ms. Burley was familiar with investigations of child abuse and would undercut her claim that she believed she was not free to leave the hospital while her child's injury was being diagnosed.

   The Burley Plaintiffs' response begins by noting that this case is primarily about the reasonableness or legality of the actions taken by the Defendants when the Burleys' child was taken to the hospital for treatment, and not about the Burleys' past conduct.  At the time Defendants acted, they were unaware of the contents of the records they now seek except for the information which Ms. Burley gave to them.  As a result, according to the Burleys, nothing in those records could have influenced Defendants' actions and, as a result, they are not relevant to any claim or defense pleaded in this case.  The Burleys also dispute that these records, even if they are not consistent with what Ms. Burley told Nationwide Children's Hospital personnel, would be admissible on the issue of credibility, pointing out that impeachment through such evidence is not permitted under Fed.R.Evid. 608(b).

   In reply, Defendants, after observing that the scope of discovery is necessarily broad, offer five reasons why the Burleys' relevance argument is unpersuasive: (1) Ms. Burley herself thought that information about past child abuse was relevant to the Defendants' actions because she volunteered it; (2) any claim which turns on the Burleys' state of mind, such as the false imprisonment claim, must be judged in light of their past contact with child abuse investigations; (3) the records, while themselves perhaps inadmissible on the issue of

credibility, may still provide information which could be used to cross-examine Ms. Burley; (4) the same is true if Ms. Burley testifies at trial that she was not familiar with child abuse investigation protocols; and (5) the one case relied on in the Burleys' memorandum, Doran v. Priddy, 534 F.Supp. 30 (D. Kan. 1981), arose out of a medical malpractice case and is not pertinent to the issues raised by Defendants' motion to compel.

### B. Discussion

The Court begins by noting that neither side has cited any cases directly on point.  Defendants cite a number of cases which contain general pronouncements about discovery, but none of them involve the type of claims presented here.  The case cited by the Burleys is, as Defendants observe, a medical malpractice case, and there are no such claims in the Burleys' complaint.  The claims presented in this case are, although they fall into well-recognized categories like false imprisonment and rendering of medical treatment without consent, based on a set of facts which is not typical of such claims.  It is hard to conceive of other situations where it might be argued that a nine-year-old record of suspected child abuse is relevant to a false imprisonment claim.  Further, most cases which involve a discovery request directed to records of a child abuse investigation involve an assertion - usually made by the agency which conducted the investigation - that the records are confidential or privileged and not subject to disclosure, and it is usually the plaintiff who has asked for them.  See, e.g., Wenk v. O'Reilly, 2012 WL 4089892 (S.D. Ohio Sept. 17, 2012).  The current motion presents practically the opposite scenario, and the Court's research has not turned up any other cases in which an issue like this one has been presented.  The Court is therefore required to begin with more general principles and to deduce its conclusions accordingly.

The first general principle of significance here - apart from the fact that the scope of discovery is broad, a principle that helps the Court resolve doubtful cases in favor of permitting discovery but which has little use in this case beyond that - is that the more directly relevant information is, the more likely it is that its production will be ordered, even if there are good arguments as to why it should not be disclosed. The converse is also true, however. The records here - at least the North Carolina records, which appear to be the only ones at issue since the Burleys have agreed to sign a release as to investigative records from Franklin County arising out of the incident which gave rise to the lawsuit - do not pertain to the child who was brought in for treatment in July, 2014. That child was only nineteen days old at the time. As the Court understands the statement given by Ms. Burley, the three children taken away from her by North Carolina authorities were all ten years old or older in 2014, and the investigation centered around the alleged abuse of the oldest child by Ms. Burley's then-husband when that child was three. The Court infers from this information that the records predate the July, 2014 incident by approximately nine years. Further, Ms. Burley did not say that she was suspected of abuse of those children, and Defendants have presented nothing to suggest that she was. At a minimum, therefore, it is fair to say that nine-year-old records of an abuse investigation involving different children and a different alleged perpetrator are not going to contain the most important information in this case. They certainly have nothing to do with the state of mind, or the reasonableness of the actions, of any of the Defendants, who were clearly unaware of the contents of those records when they decided to pursue the course of action which resulted in the Burleys' suit against them. And they almost certainly contain information, even if it simply confirms the gist of Ms. Burley's

statements, which is both sensitive and potentially prejudicial.

With those general considerations in mind - all of which suggest that the records might not be a proper subject of discovery - the Court turns to the two substantive reasons which Defendants advance as to why the records are relevant. Briefly stated, Defendants' argument is that the records would shed light on Ms. Burley's state of mind at the time she was allegedly falsely imprisoned, and that they could be used in various ways to impeach her testimony.

The state of mind argument relates to the false imprisonment claim. That claims appears to have been asserted under Ohio law, which provides that "[f]alse imprisonment entails intentionally confining a person without lawful privilege and against her consent within a limited area for any appreciable time, however short." Bennett v. Ohio Dept. of Rehab. & Corrections, 60 Ohio St.3d 107, 109 (1991). As far as what constitutes confinement, Ohio courts have cited with approval this language from Corpus Juris Secundum:

> Submission to the mere verbal direction of another, unaccompanied by force or by threats of any character, cannot constitute a false imprisonment... [F]alse imprisonment may not be predicated on a person's unfounded belief that he was restrained.

See, e.g., Lester v. Albers Super Markets, Inc., 94 Ohio App. 313, 317 (Hamilton Co. App. 1952). Stated another way, Ohio law recognizes that an "imprisonment" occurs when "a reasonable person would [not] have felt 'free to leave' under the circumstances." Cf. State v. Rutherford, 93 Ohio App. 3d 586, 597 (Montgomery Co. App. 1994). The fact that an unfounded, even if sincerely held, belief is not enough to support a false imprisonment claim, and that the focus is on what a reasonable person would have concluded from the circumstances, illustrates that inquiry about whether someone was actually restrained is an

objective one.  See also Kalbfell v. Marc Glassman, Inc., 2003 WL 21505264, *5 (Columbiana Co. App. June 26, 2003), where the court held "that ordering plaintiff to follow, in such a manner and under such circumstances that plaintiff *reasonably* believes she must so follow, is sufficient to establish confinement" (emphasis supplied); cf. Michigan v. Chesternut, 486 U.S. 567, 574 (1988)(describing the "free to leave" test as an "objective standard...").

   Given that legal backdrop, Ms. Burley's subjective belief about whether she was "imprisoned" is irrelevant.  The Court and the jury (if the case gets to that point) will have to determine what a reasonable person in her position would have believed about being free to leave, not what she believed.  Additionally, the records in question may well not contain anything pertinent to  her subjective perception of the situation at Children's Hospital in July, 2014.  For example, it is not clear that, as part of the North Carolina proceedings, the child in question was ever taken to a hospital, nor is it clear that Ms.Burley was present if and when that happened, nor that the personnel of that hospital may have said something to her about her freedom to leave during an examination of the child (especially if she was not the one suspected of abuse).  For all of these reasons, the Court concludes that it is not reasonably likely that production of those records would lead Defendants to some piece of evidence which would be either relevant or admissible on the issue of false imprisonment.

   Defendants' only other substantial argument is that the records might have some impeachment value.  There is no question that discovery of impeachment evidence is permissible because such evidence can be both relevant and admissible at trial.  However, there are limits on the scope of impeachment discovery as well; otherwise, the discovery rules would permit a party to

search for evidence that, at any time and in any situation, an adverse party or a witness may have been less than truthful.  The Court does not believe that, for example, an interrogatory asking a party to state if "he has ever lied to anyone in the past; and, if so, please provide details and identify documents about each such instance" would be a proper discovery inquiry.

As the Burleys point out, under Rule 608, specific instances of prevarication are not admissible to prove that a witness is generally untruthful.  Rather, Rule 608(a) allows only reputation or opinion evidence to be introduced on that subject, and Rule 608(b) prohibits the introduction of extrinsic evidence that a witness has, in the past, told lies.  See, e.g., Gale v. City of Tecumseh, 156 Fed.Appx. 801 (6th Cir. Dec. 15, 2005)(holding that the trial court acted properly in excluding evidence designed solely to show that a witness had lied at some other time about something other than his trial testimony).  While trial admissibility is not the touchstone of discovery relevance, it is certainly a factor to be considered.

Here, Defendants are not contending that the truth or falsity of the statements Ms. Burley made to them in July, 2014 is, of itself, important.  Even though the statements in question involved a prior instance where Ms. Burley had children taken from her, the fact that she made those particular statements to Defendants does not appear to be any more significant than the fact that she may have said other things as well.  Suppose she had also said that she bought a new Cadillac the day before; would Defendants now be entitled to compel her to produce the documents relating to that transaction on the theory that those documents (or the lack of them) showed that she lied?  It would be hard to argue that the admittedly broad scope of discovery reaches that far, and no such evidence could be presented at trial to show that Ms. Burley was generally not a truthful

person. Defendants' argument here fares no better. And their related argument that she might testify at trial to something inconsistent with the North Carolina records, which rests on the assumption that testimony about the North Carolina abuse investigation will be permitted at trial, is too speculative at this point to justify an order compelling her to authorize the release of those records. If she does give such testimony and thereby opens the door to cross-examination about what happened in North Carolina, Defendants may then be entitled to the records, but since none of that has occurred, any order compelling disclosure would be premature. The Court therefore concludes that Defendants have not made a showing of relevance sufficient to support their request for these particular records, and it will deny their motion to compel.

### III. Conclusion

For the foregoing reasons, the motion to compel the Burley Plaintiffs to execute a release (Doc. 50) is denied.

### IV. Motion to Reconsider

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge. 28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 14-01, pt. IV(C)(3)(a). The motion must specifically designate the order or part in question and the basis for any objection. Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect even if a motion for reconsideration has been filed unless it is stayed by either the Magistrate Judge or District Judge. S.D. Ohio L.R. 72.3.

<u>/s/ Terence P. Kemp</u>
United States Magistrate Judge