# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**DANIEL THOMAS,** *et al.,*

    **Plaintiffs,**

v.

**NATIONWIDE CHILDREN'S HOSPITAL, INC.,** *et al.,*

    **Defendants.**

Case No. 2:14-cv-1236
**CHIEF JUDGE EDMUND A. SARGUS, JR.**
Magistrate Judge Terence P. Kemp

## **OPINION AND ORDER**

This matter is before the Court on defendants Nationwide Children's Hospital, Inc., the Center for Family Safety and Healing, the Center for Child and Family Advocacy, Dr. Farah Wadia Brink, Dr. Jonathan Thackeray, and Dr. Corey J. Rood's ("Defendants") Motion to Seal Permanently Depositions and Portions of Plaintiffs' Brief in Opposition to Defendants' Motions for Summary Judgment (*Def. Mot. to Seal*, ECF No. 182.) Plaintiffs have filed a Memorandum in Opposition (*Pl. Mem. Opp.*, ECF No. 185), and in turn, Defendants have filed a Reply (*Reply*, ECF No. 186). On May 19, 2017 this Court issued an Order granting summary judgment to Defendants. (*Op. & Order*, ECF No. 187.) Plaintiffs filed an appeal, the Sixth Circuit entered a judgment of affirmance (ECF No. 192), and on March 8, 2018, the Sixth Circuit issued its mandate (ECF No. 193). The motions are ripe for consideration.

## I.    BACKGROUND

On March 27, 2017, the Court granted Plaintiffs' Motion to File Summary Judgment Opposition and Supporting Materials Temporarily Under Seal. (*Op. & Order*, ECF No. 173.) The Court further ordered that:

> Any party that wishes all or any portion of the opposition and supporting materials to remain under seal shall file a motion to seal on or before April 6, 2017, supported as required by *Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299 (6th Cir. 2016).

(*Id.*)

Defendants timely moved the Court to seal permanently five depositions, and to redact portions of Plaintiffs' brief. (*Def. Mot. to Seal*, ECF No. 182, at p. 1.) Specifically, Defendants seek to file a redacted version of Plaintiffs' brief filed in opposition to summary judgment (ECF No. 181), and to retain under seal five deposition transcripts:

> ECF No. 174, Deposition of Children's social worker Tishia Richardson and exhibits thereto;
>
> ECF No. 176, Deposition of Children's physician, Dr. Corey Rood and two exhibits thereto;
>
> ECF No. 178, Deposition of Cheryl Hiatt, Volume II and four exhibits thereto;
>
> ECF No. 179, Deposition of Shawn Chambers and four exhibits thereto; and
>
> ECF No. 180, Deposition of Children's physician Dr. Elizabeth Claxton and exhibits thereto.

(*Id.*) Defendants assert that "[t]hese depositions contain confidential information related to the minor-Plaintiffs' medical records, and protected health information of non-party patients of Children's." (*Id.*) Defendants address in detail each filing, and the supporting rationale for maintaining them under seal. In a somewhat unusual posture, Plaintiffs, who originally moved to file under seal (ECF No. 172), oppose maintaining these records under seal, and assert that "NCH cannot prevent Plaintiffs from filing their own information in the public record." (*Pl. Mem. Opp.*, ECF No. 185, at p. 1.) However, as the Sixth Circuit explained in *Shane Group*, the parties' positions are not controlling in the Court's determination of whether records should be sealed.

## II. MOTION TO SEAL STANDARD

In *Shane Group*, the Sixth Circuit decided a case where the district court had sealed records in a class action lawsuit, including filings and 194 exhibits, such that, "at the parties' behest, it sealed from public view most of the court filings and exhibits that underlay the proposed settlement in this case." 825 F.3d, at 304. The Court noted the strong public interest in the court records in a class action case, and that "[c]lass members cannot participate meaningfully in the process contemplated by Federal Rule of Civil Procedure 23(e) unless they can review the bases of the proposed settlement and the other documents in the court record." *Id.*, at p. 309. The *Shane Group* Court further explained the difference between blanket "protective orders" used during discovery, and orders to seal court records:

> By way of background, there is a stark difference between so-called "protective orders" entered pursuant to the discovery provisions of Federal Rule of Civil Procedure 26, on the one hand, and orders to seal court records, on the other. Discovery concerns the parties' exchange of information that might or might not be relevant to their case. "Secrecy is fine at the discovery stage, before the material enters the judicial record." *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 545 (7th Cir. 2002). Thus, a district court may enter a protective order limiting the use or disclosure of discovery materials upon a mere showing of "good cause[.]" Fed. R. Civ. P. 26(c)(1). These orders are often blanket in nature, and allow the parties to determine in the first instance whether particular materials fall within the order's protection. The district court entered several such orders here.

> "At the adjudication stage, however, very different considerations apply." *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982). The line between these two stages, discovery and adjudicative, is crossed when the parties place material in the court record. *Baxter*, 297 F.3d at 545. Unlike information merely exchanged between the parties, "[t]he public has a strong interest in obtaining the information contained in the court record." *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1180 (6th Cir. 1983). That interest rests on several grounds. Sometimes, the public's interest is focused primarily upon the litigation's result—whether a right does or does not exist, or a statute is or is not constitutional. In other cases—including "antitrust" cases, *id.* at 1179—the public's interest is focused not only on the result, but also on the conduct giving rise to the case. In those cases, "secrecy insulates the participants, masking impropriety, obscuring incompetence, and concealing corruption." *Id.* And in any of these cases, the

3

public is entitled to assess for itself the merits of judicial decisions. Thus, "[t]he public has an interest in ascertaining what evidence and records the District Court and this Court have relied upon in reaching our decisions." *Id.* at 1181; *see also, e.g., Baxter*, 297 F.3d at 546.

*Id.*, at p. 305.

The Sixth Circuit's decision requires a district court to balance, among other things, the nature of the public's interest in the litigation's subject matter; whether the information sought to be sealed is required by statute to be maintained in confidence; and the privacy interests of innocent third parties. *Id.*, at pp. 305, 308.

### III. DEFENDANTS' MOTION TO SEAL

Defendants move to seal certain documents over the objection of Plaintiff parents who seek to file publicly certain medical and health care related records in this case pertaining to their infant children. (*Mot. to Seal*, ECF No. 182.) Defendants seek to redact portions of Plaintiffs' brief (ECF No. 181) that contains medical and health care information, and seek to maintain under seal five of the 24 depositions in this case:

> As to Doc. No. 174, the deposition of Children's social worker, Tishia Richardson, the deposition transcript and exhibits should remain under seal because Ms. Richardson was questioned about the minor-Plaintiffs' medical treatment. Further, she was questioned regarding the report that was made to FCCS, which contain portions of the medical records of some of the minor plaintiffs and this documentation is not otherwise a public record or subject to a public records request.
>
> Likewise, the depositions of the physicians should be sealed. As to Documents 176 and 180, the depositions of Children's physicians, Drs. Rood and Claxton, respectively, the deposition transcripts and exhibits should remain under seal because the physicians discuss patient-specific medical information. The two exhibits to Dr. Rood's deposition are the minor-Plaintiffs' medical records and a disc containing a surreptitious video recording by a non-party of Dr. Rood discussing the non-party patient's medical diagnosis and prognosis. Exhibits 1-9 of Dr. Claxton's deposition are the minor-Plaintiffs' medical records.
>
> As to Documents 178 and 179, the depositions of Cheryl Hiatt and Shawn Chambers, respectively, the deposition transcripts discuss patient-specific medical

4

information as well as confidential hospital information generated pursuant to the hospital's internal quality improvement team, which the hospital treats as confidential and protected by the Peer Review Privilege. In addition, Exhibit Nos. 3 and 4 to both depositions contain the identities and facts of treatment of non-party patients of Children's, which is protected health information under the Health Insurance Portability and Accountability Act. The patient families identified in the exhibits have not authorized the public filing of their protected health information. Moreover, sealing the exhibits is the narrowest relief available to protect the non-party patient families' confidential information, since the contents of the letter relates to their medical care and treatment.

(Id., at pp. 1-2.)

Defendants assert that, "[w]hile the adult Plaintiffs do not indicate why they would want their children's medical records filed publicly, the fact is that the records are so sensitive and confidential that they are protected from disclosure under federal and state law." (*Reply*, ECF No. 186, at p. 1.)

## IV. DISCUSSION

Guided by *Shane Group*, the first consideration is the nature of the public's interest in the case. In the case at bar, the Court finds that the public interest in the records at issue is *de minimis*. The issues in this case are described succinctly in the Sixth Circuit's opinion in the case *sub judice*:

> Medical personnel treated three infants, between 19–days old and six-months old, in the emergency room of Nationwide Children's Hospital for serious injuries, including skull fractures and a broken leg. Nationwide's physicians suspected child abuse, and they conducted x-rays, a CT scan, and blood testing to identify additional injuries, after which they alerted Franklin County Children Services of their concerns.
>
> The parents of the infants filed a § 1983 claim against Nationwide and the County (among others), alleging that the medical testing violated their children's Fourth (and Fourteenth) Amendment right to be free from unreasonable searches and their own Fourteenth Amendment right to familial association. The district court granted summary judgment to Nationwide and the County. Because state action did not prompt Nationwide, a private hospital, to perform the diagnostic tests, because the County had nothing to do with the tests, and because the parents at any rate consented to the tests, we affirm.

*Thomas v. Nationwide Children's Hospital*, 882 F.3d 608, 610 (6th Cir. 2018).

The information sought to be sealed in the case at bar, includes minor patients' confidential medical information and information from physicians, social workers and other staff concerning internal hospital procedures. Now that the case has concluded without trial, the child's medical records are not of public interest and contain highly personal information. As to the records documenting the hospital's confidential internal procedures for handling suspected incidents of child abuse, publicizing the procedures could assist persons who could wish to circumvent the very safeguards the state legislature has put in place to protect children which is not in the public interest. This factor weighs in favor of sealing the documents.

A second factor to consider is whether the information sought to be sealed is required by statute to be maintained in confidence. Defendants assert that "these transcripts and exhibits thereto contain protected health information under the Health Insurance Portability and Accountability Act" and that the subject medical records "contain personal, federally protected health information that is deemed confidential by state and federal law." (*Def. Mot. to Seal*, ECF No. 182, at pp. 1, 3) (citing HIPAA, 42 U.S.C. § 1320d *et seq.* and O.R.C. § 3701.17(B).) Indeed, Plaintiffs concede that "[a]s a covered entity under HIPAA and its related regulations, NCH has obligations relating to the use or disclosure of its patients protected health information." (*Pl. Mem. Opp.*, ECF No. 185, at p. 3.) "But those obligations do not restrict the patients from filing their own protected health information in the public record." (*Id.*) In support of their premise, Plaintiffs rely upon the application of *Shane Group* generally, and cite to no additional cases.

HIPAA is a federal law that seeks to ensure the security and privacy of health information. *Wade v. Vabnick–Wener*, 922 F.Supp.2d 679, 687 (W.D.Tenn.2010). The enactment

6

of HIPAA ushered in a "strong federal policy in favor of protecting the privacy of patient medical records." *Law v. Zuckerman,* 307 F.Supp.2d 705, 711 (D. Md. 2004). For example, HIPAA permits a physician to disclose protected health information to comply with a court order, subpoena, discovery request, or other lawful process. "But a physician may disclose protected health information in response to a subpoena, discovery request, or other lawful process only if (1) the patient has been given notice of the request for information; or (2) the physician receives 'satisfactory assurance' from the party seeking the information that reasonable efforts have been made to secure a qualified protective order." *Thomas v. 1156729 Ontario, Inc.*, 979 F.Supp.2d 780, 783 (E.D. Mich. 2013). In *Turk v. Oiler*, 732 F.Supp.2d 758 (N.D. Ohio 2010), our sister court examined the confidentiality requirements of HIPAA, and explained that Ohio's treatment of the confidentiality of medical records is even more stringent than HIPAA's, and is thus not preempted:

> As a general rule, an individual's medical records are confidential. *Hageman v. Southwest General Health Center,* 119 Ohio St.3d 185, 893 N.E.2d 153, 155 (2008). Under the Health Information Portability and Accountability Act of 1996 ("HIPAA"), a hospital's release of medical records to law enforcement is permitted under certain circumstances. Indeed, HIPAA specifically authorizes a hospital to release a patient's medical records in response to a grand jury subpoena. 45 C.F.R. § 164.512(f)(1)(ii)(B).
>
> Ohio's physician-patient privilege, however, codified in O.R.C. § 2317.02(B)(1), provides that a physician shall not testify as to "a communication made to the physician ... by a patient in that relation or the physician's ... advice to a patient." The term "communication," as used in § 2317.02(B), includes hospital records "and is sufficiently broad to cover any confidential information gathered or recorded within them during the treatment of a patient at the hospital." *State v. Russ,* No. CA99–07–074, 2000 WL 864989, *5, 2000 Ohio App. LEXIS 2759, *14 (Ohio Ct.App. June 26, 2000).
>
> Ohio courts have found that O.R.C. § 2317.02(B) is more stringent than HIPAA, and therefore is not preempted, because it "prohibits use or disclosure of health information when such use or disclosure would be allowed under HIPAA." *Grove v. Northeast Ohio Nephrology Assocs.,* 164 Ohio App.3d 829, 844 N.E.2d 400, 406–07 (2005); *see also Progressive Preferred Ins. Co. v. Certain Underwriters*

*at Lloyd's London,* No. 2006–L–242, 2008–Ohio–2508, 2008 WL 2169404, 2008 Ohio App. LEXIS 2114, ¶ 14 (Ohio Ct.App. May 23, 2008) (finding that "since the privacy requirements of R.C. 2317.02(B)(1) are more extensive than those mandated by HIPAA, it is not preempted by the federal enactment"); *State v. Flanigan,* No. 21460, 2007–Ohio–3158, 2007 WL 1805801, 2007 Ohio App. LEXIS 2909, ¶¶ 76–77 (Ohio Ct.App. June 22, 2007) (finding that HIPAA does not preempt R.C. § 2317.02(B) because the records sought were "clearly protected individualized identifiable health information").

Thus, while HIPAA allows disclosure of protected health information in response to a grand jury subpoena, O.R.C. § 2317.02(B) permits disclosure only in certain limited circumstances. *See May v. Northern Health Facilities, Inc.,* No. 2008–P–0054, 2009–Ohio–1442, 2009 WL 806927, 2009 Ohio App. LEXIS 1195, ¶ 12 (Ohio Ct.App. March 27, 2009) (contrasting HIPAA's privacy regulation, which "allows disclosure of protected health information in the course of any judicial or administrative proceeding in response to a court order * * * by subpoena, discovery request or by other lawful process" with R.C. 2317.02(B)(1) which permits disclosure in specific circumstances); *Gress v. Coshocton Co. Memorial Hospital,* No. 2:07–cv–434, 2009 WL 2914061, *1, 2009 U.S. Dist. LEXIS 86446, *4 (S.D.Ohio Sept. 8, 2009) (noting that Ohio law "contains stricter provisions concerning the disclosure of information in patient records" and that O.R.C. § 2317.02 allows for the disclosure of otherwise privileged medical information "only in five specific circumstances, none of which are present here"). As a result, HIPAA does not preempt O.R.C. § 2317.02(B).

*Id.*, at pp. 770-71. The balance in the case at bar is inclined towards confidentiality, especially in light of HIPAA and Ohio's even more stringent confidentiality laws, and perhaps especially because the records referred to are medical records of and health care discussions about the treatment of infant children who had presented with serious injuries suspicious for child abuse.

A third factor to consider is the privacy interests of third parties. As the *Shane Group* Court stated:

Finally, the point about third parties is often one to take seriously; "the privacy interests of innocent third parties should weigh heavily in a court's balancing equation." *United States v. Amodeo,* 71 F.3d 1044, 1050 (2d Cir. 1995). For example, in *Knoxville News–Sentinel*—a case involving litigation between a bank and the FDIC—we affirmed the district court's decision to seal bank records containing financial information about the bank's customers. Various "statutory provisions and regulatory rules" protected the customers' information from disclosure, 723 F.2d at 476; and the "order of the district court [was] narrowly

tailored to serve that interest." *Id.* at 477. Moreover, the customers themselves had done nothing to give rise to the suit. *Id.*

*Shane Group*, 825 F.3d, at 308.

In the case at bar, Defendants seek to seal the depositions of Cheryl Hiatt (ECF No. 178) and Shawn Chambers (ECF No. 179) and related exhibits pertaining to medical information relating to nonparties. Plaintiffs contest sealing these materials, asserting that the families of those minor children "have provided NCH authorizations to disclose protected health information to plaintiffs' counsel" and the "authorizations acknowledge that the provided information may be re-disclosed." (*Pl. Mem. Opp.*, ECF No. 185, at p. 5.) Plaintiffs cite to no authority to support the public filing of the non-party minors' medical information except that they believe they are authorized to do so. Plaintiffs also assert that the Hiatt and Chambers depositions "discuss information NCH 'treats as confidential and protected by the Peer Review Privilege,'" and that "the Court has already rejected NCH's assertion of the peer review privilege in this case." (*Id.*, at p. 6.)

The state law privilege at issue is codified at O.R.C. § 2305.252, and reads in pertinent part:

> Proceedings and records within the scope of a peer review committee of a health care entity shall be held in confidence and shall not be subject to discovery or introduction in evidence in any civil action against a health care entity or health care provider, including both individuals who provide health care and entities that provide health care, arising out of matters that are the subject of evaluation and review by the peer review committee. No individual who attends a meeting of a peer review committee, serves as a member of a peer review committee, works for or on behalf of a peer review committee, or provides information to a peer review committee shall be permitted or required to testify in any civil action as to any evidence or other matters produced or presented during the proceedings of the peer review committee or as to any finding, recommendation, evaluation, opinion, or other action of the committee or a member thereof.

O.R.C. § 2305.252(A).

9

The term "peer review committee" is defined in O.R.C. §2305.25(E)(1) as a utilization review committee, quality assessment committee, performance improvement committee, tissue committee, credentialing committee, or other committee that does either of the following:

(a) Conducts professional credentialing or quality review activities involving the competence of, professional conduct of, or quality of care provided by health care providers, including both individuals who provide health care and entities that provide health care;

(b) Conducts any other attendant hearing process initiated as a result of a peer review committee's recommendations or actions.

The Magistrate Judge explained that

> ... such a committee, in order to qualify, must conduct proceedings which involve one of three things: (1) the competence of a health care provider; (2) the professional conduct of such a provider; or (3) the quality of care given by a provider. As the Ohio courts have said, "[t]he purpose of the statute is to protect the integrity of the peer-review process in order to improve the quality of health care." *See Smith v. Cleveland Clinic*, 197 Ohio App.3d 524, 529 (Cuyahoga Co. App. 2011). That case also notes that this privilege, being in derogation of the common law, "must be strictly construed against the party seeking to assert it and may be applied only to those circumstances specifically named in the statute." *Id.* at 528. The Court also notes that a reasonable construction of the statute is that it applies only to activities that are actually peer review proceedings (which, in the words of the statute's consist either of credentialing or "quality review activities"), and not to every activity that a hospital might label as "peer review."

(Op. & Order, ECF No. 134, at p. 12-13.)

Plaintiffs are correct, insofar as the Court concurred in the decision of the Magistrate Judge to permit discovery over Defendants' assertion of the state peer review privilege under O.R.C. § 2305.252, observing that, "entirely apart from the fact that federal courts generally do not recognize this privilege, the Court believes that not applying it to this particular situation will not undermine the Hospital's ability to provide quality care to its patients." (*Op. & Order*, ECF No. 168, at p. 4.) However, the Court does not equate permitting Plaintiffs to depose Ms. Hiatt and Mr. Chambers for purposes of discovery to a finding that the content of those depositions

should become a public record. To the contrary, the content of those depositions touches on confidential medical information of third-party minors, and confidential procedures for securing treatment in accordance with the state of Ohio's mandatory reporting laws enacted to protect minor children. In this posture, Ohio's strong medical confidentiality protections, and the confidentiality interests of third-parties as discussed in *Shane Group* weighs in favor of keeping the sealed materials under seal.

Upon review of the materials, and the factors discussed in *Shane Group*, the Court finds that this is not the type of case where the public's interest is focused not only on the result, but also on the conduct giving rise to the case. This is not a case where "secrecy insulates the participants, masking impropriety, obscuring incompetence, and concealing corruption." *Shane Group*, 825 F.3d, at p. 305. On the contrary, this is a case where the public's interest lies in protecting the medical information concerning minor children, and the hospital protocols put in place to care for them.

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendants' Motion to Seal Permanently Depositions and Portions of Plaintiffs' Brief in Opposition to Defendants' Motions for Summary Judgment (*Def. Mot. to Seal*, ECF No. 182.) Defendants shall, **within 14 days** of the entry of this Order, file under seal a redacted version of Plaintiffs' brief (ECF No. 181) for the Court's consideration.

**IT IS SO ORDERED.**

3-27-2018
**DATE**

EDMUND A. SARGUS, JR.
**CHIEF UNITED STATES DISTRICT JUDGE**